UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

ESTELLE GRIMES, Individually
and as Administrator for the
Estate of Thomas Grimes, and
Individual Heirs of the Estate of
Thomas Grimes,

Plaintiff,

v.

AT&T CORP., et al.,
Defendants.

Civ. No. 15-8466 (KM) (MAH)

OPINION

**KEVIN MCNULTY, U.S.D.J.:**

Plaintiff Estelle Grimes, individually and as the administrator of the estate of her husband, Thomas Grimes, and on behalf of his individual heirs ("Grimes"), brings suit against, among others, AT&T Corp. ("AT&T"), Bayonne Plumbing Supply Co., Inc. ("Bayonne Plumbing"), Koenig Industrial Hardware ("Koenig"), and Mooney Brothers Corp. ("Mooney"), alleging that Mr. Grimes's mesothelioma was caused by exposure to asbestos or asbestos-containing products mined, milled, manufactured, sold, supplied, purchased, marketed, installed and/or removed by the defendants.

Before the Court are four motions for summary judgment: 1) AT&T's (ECF No. 184); 2) Bayonne Plumbing's (ECF No. 185); 3) Koenig's (ECF No. 187); and 4) Mooney's (ECF No. 188). For the reasons set forth below, I will *sua sponte* remand the case to the Superior Court of New Jersey, Middlesex County on jurisdictional grounds.

I.   **Procedural History**

On October 28, 2015, Thomas Grimes and Estelle Grimes, who are husband and wife, filed their initial Complaint in the Superior Court of New

1

Jersey, Law Division, Middlesex County. (ECF No. 1-1 at p. 3-29). The Complaint alleged that Mr. Grimes was "exposed to dust from asbestos and asbestos-containing products" while serving in the Navy and while working at Western Electric in Kearny, New Jersey. (*Id.* at 3). The Complaint was filed against 37 Defendants, each of which allegedly "mined, milled, manufactured, sold, supplied, purchased, marketed, installed and/or removed asbestos or asbestos-containing products" to which Mr. Grimes was exposed. (*Id.* at 3-11).

The Defendants were:
1) AT&T, individually and as successor-in-interest to Western Electric Company;
2) Asbestos Corporation Limited, in itself and as successor to Johnson's Company ("ACL");
3) Bell Asbestos Mines LTD ("Bell");
4) Allied Building Products Corp. ("Allied Building");
5) Allied Glove & Safety Products Manufacturing Corp. ("Allied Glove");
6) Bayonne Plumbing, individually, as successor to and doing business as the RAL Corporation and Bayonne Plumbing & Supply Co.;
7) Bergen Industrial Supply Co. Inc. ("Bergen Industrial");
8) Binskey & Snyder, Inc. ("Binskey & Snyder");
9) Buffalo Pumps, Inc., individually and as successor to Buffalo Forge Co. ("Buffalo Pumps");
10) Calon Insulation Corp. ("Calon Insulation");
11) CBS Corp., f/k/a Westinghouse Electric Corporation ("CBS Corp.");
12) Central Jersey Supply Company ("Central Jersey Supply");
13) Certainteed Corporation, formerly CertainTeed Products Corporation, individually and as successor to Keasbey and Mattison Company and Unisul ("Certainteed");
14) Crane Company ("Crane");
15) Elizabeth Industrial Supply, a division of Charles F. Guyon ("Elizabeth Industrial");
16) FMC Corporation, individually and as successor to Peerless Pumps ("FMC")
17) Flowserve US Inc. ("Flowserve");
18) Foster Wheeler Corporation ("Foster Wheeler");
19) General Electric Company ("General Electric");
20) Gould Pumps, Inc. ("Gould Pumps");
21) IMO Industries Inc., individually and as successor-in-interest to, and f/k/a Delaval Turbine Inc., TransAmerica Delaval and IMO Delaval ("IMO");
22) Ingersoll-Rand Company ("Ingersoll-Rand");
23) Koenig, individually and as successor to Koenig Hardware Company;

24) Mooney, individually and doing business as Chem. Flow Corporation, its wholly owned subsidiary;
25) Notte Safety Appliance Company ("Notte Safety");
26) Onyx Industrial, Inc., individually, as successor to and doing business as Brand Insulations, Inc., the Brand Companies, Inc., and Waste Management, Inc. ("Onyx Industrial");
27) Raritan Supply Company, individually and as successor to Bridge Supply Co. ("Raritan Supply");
28) RICO, Inc. ("RICO");
29) Safeguard Industrial Equipment Co. ("Safeguard Industrial");
30) Somerset Plumbing Supply Co. Inc., individually and as successor to Somerset Supply Co. ("Somerset Plumbing");
31) Tyco Valves and Controls, Inc. ("Tyco Valves");
32) Tyco International (US) Inc. ("Tyco International");
33) Union Carbide Corporation ("Union Carbide");
34) Warren Pumps Inc. ("Warren Pumps");
35) Weir Valves and Controls USA Inc., f/k/a Atwood & Morrill ("Weir Valves");
36) John Doe Corporations 1-25; and
37) John Doe Corporations 25-50.

Mr. and Mrs. Grimes asserted 11 state-law claims, including negligence, breach of warranty, intentional and negligent misrepresentation, civil conspiracy, and loss of consortium. (ECF No. 1-1 at 11-25).

On or about October 30, 2015, Mr. Grimes answered Middlesex County Standard Interrogatories. (ECF No. 185-3, Exh. B).

On December 4, 2015, Defendant Crane filed a Notice of Removal to the United States District Court pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1). (ECF No. 1).

On February 24, 2016, Grimes voluntarily dismissed all counts against Notte Safety with prejudice pursuant to a stipulation of dismissal entered by the Court on the next day. (ECF No. 45).

Mr. Grimes died in May 2016. On August 1, 2016, the Complaint was amended to name Estelle Grimes as Plaintiff, individually and as the administrator for the estate of Thomas Grimes, and individual heirs of the estate of Thomas Grimes. The Amended Complaint asserted 13 state-law

claims.[1] (ECF No. 101 at 11-28). The Defendants were the same 37 entities that were identified in the original Complaint, and the claims in Counts 1-11 were earlier asserted in the original Complaint. (*Id.* at 11-26). In addition to Counts 1-11, Grimes brings a claim of wrongful death (Count 12) and a survival action (Count 13) under New Jersey law pursuant to N.J.S.A. §§ 2A:31-1 and 2A:15-3. (*Id.* at 26-28). 17 Defendants each filed Answers, Affirmative Defenses, Crossclaims for indemnification and contribution, and Answers to the crossclaims.[2]

On August 4, 2016, Defendants ACL and Bell each filed mirror-image motions to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). (ECF Nos. 99, 100). I denied the motions as presented without prejudice, subject to renewal pending the completion of limited jurisdictional discovery. (ECF No. 132). Thereafter, Grimes voluntarily dismissed all counts against ACL and Bell with prejudice pursuant to stipulations of dismissal entered by the Court on February 14, 2017 (ECF No. 137) and March 20, 2017 (ECF No. 143). Accordingly, ACL and Bell were terminated from the case.

On November 15, 2017, Emerson Electric Co. ("Emerson"), "incorrectly named on the Summons as Emerson Electric Company, as successor to

---

[1] On August 10, 2016, a corrected copy of the Amended Complaint was filed. (ECF No. 101). In an accompanying letter, counsel explained that the original Amended Complaint included an incorrect caption. (ECF No. 102).

[2] The Defendants are: 1) Bayonne Plumbing (ECF no. 105); 2) Allied Glove (ECF no. 108); 3) RICO (ECF no. 109); 4) Central Jersey Supply (ECF no. 110); 5) Flowserve (ECF no. 111); 6) Raritan Supply (ECF no. 112); 7) Weir Valves (ECF no. 113); 8) Binskey & Snyder (ECF no. 114); 9) Mooney (ECF no. 115); 10) Onyx (ECF no. 116); 11) Warren Pumps (ECF no. 120); 12) Koenig (ECF no. 124); 13) Elizabeth Industrial (ECF no. 154); 14) CBS Corp. (ECF no. 160); 15) Foster Wheeler (ECF no. 161); 16) General Electric (ECF no. 162); and 17) AT&T (ECF no. 167).

In its Answer, Onyx states that it was improperly pled as "Onyx Industrial Inc. individually, as successor to and doing business as Brand Insulations, Inc., The Brand Companies, Inc. and Waste Management")." (ECF no. 116 at 1). It states that it should have been identified as "Brand Insulations, Inc." (*Id.*) To avoid confusion, however, I will refer to that defendant as Onyx.

Pentair Valves and Controls, formerly known as Tyco Valves and Controls, Inc.," filed a motion to dismiss for lack of jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(5), and 12(b)(6). (ECF No. 170 at 1).

On November 29, 2015, Counsel for Grimes filed a letter stating that he had no objection to the Amended Order (ECF No. 171) to Dismiss with Prejudice. (ECF No. 172). This Court subsequently issued an Order on January 2, 2018 granting Emerson's motion to dismiss. (ECF No. 173).

On July 11, 2018, Grimes sought leave from this Court to supplement its opposition to AT&T's Summary Judgment Motion (ECF No. 212) with the transcript from a New Jersey Superior Court opinion issued recently in *William Savage v. AT&T Corporation, et. al.* MID-L- 07305-15. (ECF No. 232). The next day, AT&T filed a letter asking this Court to deny the request, and in the alternative, requesting that this Court 1) grant it leave to argue the merits of *Savage*, and 2) order Grimes to submit the ruling in its entirety. (ECF No. 233). On July 13, 2018, I granted Grimes' request for leave subject to the conditions suggested by AT&T. (ECF No. 234). Thereafter, Grimes submitted the entire transcript of the *Savage* hearing. (ECF No. 235). This Court then issued a text order giving Grimes the option to submit a letter regarding the significance of the transcript to the pending summary judgment motion, and also allowing AT&T to submit a reply. (ECF No. 236). Pursuant to that Order, Grimes filed a letter (ECF No. 237), and AT&T filed a reply (ECF No. 238).

Numerous defendants, including Crane, the entity which removed the case to this Court, filed summary judgment motions under Fed. R. Civ. P. 56. (*See* ECF No. 190). Grimes did not file papers in opposition to the motions of certain defendants, including Crane. In response to an inquiry from a clerk on behalf of the Court, on July 26, 2018, counsel for Grimes filed a letter affirmatively acknowledging that she does not oppose judgment in favor of certain defendants, including Crane. (ECF No. 239). The next day, this Court issued an Order granting summary judgment as unopposed and entering judgment in favor of those defendants, including Crane. (ECF No. 240).

Accordingly, before this Court are the remaining four motions for summary judgment submitted by: 1) AT&T (ECF No. 184); 2) Bayonne Plumbing (ECF No. 185); 3) Koenig (ECF No. 187); and 4) Mooney (ECF No. 188).[3]

## II. Subject Matter Jurisdiction

Before addressing the merits of those motions, I must address jurisdiction. Although no party has challenged this Court's jurisdiction, "because subject matter jurisdiction is non-waivable, courts have an independent obligation to satisfy themselves of jurisdiction if it is in doubt." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 278 (1977). Here, given that Crane, the jurisdiction-conferring defendant, is no longer a party to the case, this Court's jurisdiction is indeed in doubt.

As I noted in my previous Memorandum & Order addressing motions to dismiss filed by defendants ACL and Bell, Crane based its removal petition on on the federal officer removal statute, 28 U.S.C. § 1442(a)(1). (*See* ECF No. 1; ECF No. 132 at 2 n.2). The federal officer removal statute is "a pure jurisdictional statute, seeking to do nothing more than grant district court jurisdiction over cases in which a federal officer is a defendant." *Mesa v. California*, 489 U.S. 121, 136 (1989). Its "central aim is protecting officers of the federal government from interference by litigation in state court while those officers are trying to carry out their duties. The statute has been amended over the years to permit removal in a broader set of circumstances." *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 811 (3d Cir. 2016) (internal citation omitted).[4]

---

[3] General Electric had also filed a motion for summary judgment. (ECF no. 201). However, on April 5, 2018, counsel for General Electric filed a letter indicating that it had settled the case with Grimes, and therefore withdrew its motion (ECF no. 201) for summary judgment. (ECF No. 229). This Court then issued an Order withdrawing General Electric's motion. (ECF No. 230).

[4] *See* 14C Wright & Miller, Federal Practice & Procedure § 3726 (4th ed.) ("Sections 1442 and 1442a are lineal descendants of Section 3 of the 'Force Act,' which was enacted on March 2, 1833. That statute sought to protect federal officers who were engaged in enforcing the revenue laws of the United States from attempts (primarily by South Carolina) to nullify the national laws by local statutes.").

6

Section 1442(a) provides as follows:

> a civil action ... that is commenced in a State Court and that is against or directed to [ the United States or any agency thereof or any officer ... of the United States or any agency thereof, in an official or individual capacity, for or relating to any act under color of such office ...] may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending.

28 U.S.C. § 1442(a)(1). It is an exception to the well-pleaded complaint rule. *See Mesa*, 489 U.S. at 136 ("The removal statute itself merely serves to overcome the 'well-pleaded complaint' rule which would otherwise preclude removal even if a federal defense were alleged."); *Jefferson County v. Acker*, 527 U.S. 423, 430-31 (1999) ("Suits against federal officers are exceptional.... Under the federal officer removal statute, suits against federal officers may be removed despite the nonfederal cast of the complaint; the federal question element is met if the defense depends on federal law.").

In order to properly remove a case under § 1442(a)(1), a defendant must meet four requirements:

> (1) [the defendant] is a 'person' within the meaning of the statute; (2) the [plaintiff's] claims are based upon the [defendant's] conduct 'acting under' the United States, its agencies, or its officers; (3) the [plaintiff's] claims against [the defendant] are 'for, or relating to' an act under color of federal office; and (4) [the defendant] raises a colorable federal defense to the [plaintiff's] claims.

*Papp*, 842 F.3d at 812 (citation omitted). Here, defendant Crane, though not a federal officer as such, asserted that it could avail itself of a "government contractor" defense. *See Boyle v. United Techs Corp.*, 487 U.S. 500 (1988). Although no party challenged Crane's claim to a governmental contractor defense, I nevertheless addressed jurisdiction and concluded that at the motion-to-dismiss stage, Crane had presented sufficient indications of a colorable federal defense for the purposes of federal court jurisdiction under 28 U.S.C. § 1442. (*See* ECF No. 132 at 2 n.2).

Now, at present day, as a result of my July 27, 2018 Order granting summary judgment and entering judgment in favor of Crane, *see* (ECF No. 240), Crane was terminated from this case. I must therefore, *sua sponte*, reconsider jurisdiction:

> Because Section 1442(a)(1) authorizes removal of the entire action even if only one of the controversies it raises involves a federal officer or agency, the section creates a species of statutorily-mandated supplemental subject-matter jurisdiction. The district court can exercise its discretion to decline jurisdiction over the supplemental claims if the federal agency drops out of the case, or even if the federal defendant remains a litigant.

Wright & Miller, *supra*, § 3726 (footnotes omitted).[5] "If the federal party is eliminated from the suit after removal under [Section 1442(a)(1)], the district court does not lose its ancillary or pendent-party jurisdiction over the state law claims against the remaining non-federal parties. Instead, the district court retains the power either to adjudicate the underlying state law claims or to remand the case to state court." *D.C. v. Merit Sys. Prot. Bd.*, 762 F.2d 129, 132–33 (D.C. Cir. 1985) (internal citations omitted).

In *State of N.J. Dep't of Envtl. Prot. v. Gloucester Envtl. Mgmt. Servs., Inc.*, a judge of this District Court recognized this principle: "When an action is properly removed pursuant to section 1442(a)(1), a federal court can exercise ancillary jurisdiction over the entire controversy. If a court dismisses the federal defendant from such a case, it must use its discretion to decide whether to remand the remaining ancillary claims to state court or to maintain jurisdiction over those claims." 719 F. Supp. 325, 334 (D.N.J. 1989) (internal

---

[5] *See D.C. v. Merit Sys. Prot. Bd.*, 762 F.2d 129, 132–33 (D.C. Cir. 1985) (internal citations omitted) ("If the federal party is eliminated from the suit after removal under [Section 1442(a)(1)], the district court does not lose its ancillary or pendent-party jurisdiction over the state law claims against the remaining non-federal parties. Instead, the district court retains the power either to adjudicate the underlying state law claims or to remand the case to state court."); *but see* Wright & Miller, *supra*, § 3726 (acknowledging that "[s]ome courts, however, have held that once a federal court properly acquires jurisdiction by removal under Section 1442(a)(1), the federal court has no discretion to remand any portion of a case," and listing cases in footnote).

8

citations omitted). *See Cohen v. Estate of Lionel*, No. CV 2011-0077, 2016 WL 1039551, at *4 (D.V.I. Mar. 10, 2016) ("[I]f a case is properly removed, and the basis for that removal—the federal defendant—is dismissed after removal is effected, the district court is charged with exercising its discretion as to whether it will continue to exercise jurisdiction over the case.")

Now that Crane's unopposed motion for summary judgment has been granted and judgment entered in its favor, no federal defendant remains, and the only claims remaining arise under state law. There is no federal law claim, *see* 28 U.S.C. § 1331, or claim of diversity of citizenship, *see id.* § 1332. Subject matter jurisdiction over these state law claims could only be predicated on the supplemental jurisdiction statute, *see id.* § 1367. I must therefore decide whether it is appropriate to decline to exercise supplemental jurisdiction and remand the case to state court.

Under 28 U.S.C. § 1367(c), a court may decline to exercise supplemental jurisdiction over a state-law claim where

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). That statute "grants district courts the discretion to refuse to exercise supplemental jurisdiction when 'values of judicial economy, convenience, fairness, and comity' counsel that the district court remand state claims to a state forum." *Hudson United Bank v. LiTenda Mortg. Corp.*, 142 F.3d 151, 157 (3d Cir. 1998) (quoting *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173–74 (1997)).

I find that § 1367(c)'s discretionary factors weigh in favor of this Court's declining to exercise supplemental jurisdiction.

9

The first three factors apply. Grimes and her husband initially filed this case in the Superior Court of New Jersey, Middlesex County, intending to pursue it there. All of the claims alleged in the Amended Complaint (and the initial Complaint) are predicated on New Jersey state law. In other words, this is a pure state law case which presumptively is better adjudicated in New Jersey state court. Of particular significance is the fact that this is an asbestos case implicating complex state law issues. New Jersey has centralized asbestos litigation in Middlesex County; all asbestos-related cases in New Jersey are handled by a single judge in that vicinage with the assistance of a special master. Above and beyond the usual presumption that state courts are best equipped to handle state cases, that particular state court has developed a specialized expertise.[6]

It is true that there have been substantial proceedings in this, the federal case. Much of it, however, has consisted of weeding out defendants against which the plaintiff seems to have never had any substantial basis for a claim. Indeed, one of these was Crane, the single defendant upon which federal jurisdiction was based. The plaintiff remained silent in response to Crane's summary judgment motion and, upon inquiry, consented to entry of judgment in Crane's favor. The progress of the federal case, then, must be set against the insubstantiality of the claims against the only putative federal defendant.

---

[6] See Notice to the Bar, Mass Torts - Asbestos Litigation, dated April 11, 2008, http://www.judiciary.state.nj.us/notices/2008/n080414b.pdf (advising that the New Jersey Supreme Court issued an Order on April 8, 2008 designating all New Jersey state court asbestos litigation as a mass tort (multi-county litigation) and assigning that litigation to Judge Ann G. McCormick in the Middlesex Vicinage for centralized management, and providing copy of the Order); Supreme Court of New Jersey Order, dated July 10, 2012, https://www.njcourts.gov/notices/2012/n120801j.pdf?cacheID=H3TlyJa (amending the April 8, 2008 Order "so as to reassign all matters to Superior Court Judge Vincent LeBlon in the Middlesex Vicinage," effective September 1, 2012); Supreme Court of New Jersey Order, dated February 10, 2014 (further amending the April 8, 2008 Order, as amended by Order dated July 10, 2012, "so as to reassign all such matters to Superior Court Judge Ana C. Viscomi in the Middlesex Vicinage," effective March 1, 2014).

The inconvenience of remand, moreover, is not great. Although this case is now at the summary judgment stage, the relevant motions are easily transplanted. The parties may refile their motions for summary judgment and obtain a ruling on these state law issues in that forum. *See, e.g., Makwana v. Medco Health Services, Inc.*, 2016 WL 7477755, at *4–5 (D.N.J. 2016) (declining to exercise supplemental jurisdiction over the plaintiffs' remaining state law claims, and recognizing that although "remand will certainly delay decision on the remaining summary judgment issues, the parties' central facts and substantive arguments should remain the same. Remand would serve the goals of judicial economy and comity by allowing the New Jersey courts to apply New Jersey law").

Weighing all of the factors, I exercise my discretion to decline the exercise of supplemental jurisdiction over the state law claims. A remand to New Jersey Superior Court in Middlesex County will best serve the interests of comity, fairness, and judicial economy here.

### III. Conclusion

For the reasons stated above, it is hereby ordered that the action is remanded to the Superior Court of New Jersey, Middlesex County.

The Clerk shall close the file and terminate all pending matters including, but not limited to, the following motions for summary judgment: 1) AT&T's motion for summary judgment (ECF No. 184); 2) Bayonne Plumbing's motion for summary judgment (ECF No. 185); 3) Koenig's motion for summary judgment (ECF No. 187); and 4) Mooney's motion for summary judgment (ECF No. 188).

An Order will be entered in accordance with this Opinion.

Dated: August 17, 2018

*Kevin McNulty*

**Hon. Kevin McNulty**
**United States District Judge**